## Shaw, Committee, et al. v. Piper.

(Decided November 17, 1911.)

Appeal from Fayette Circuit Court.

Personal Property—Sale for Reinvestment.—In an action to sell the property of persons under disability for reinvestment, the court gives considerable weight to the judgment of the chancellor where the evidence is conflicting, and will not disturb his judgment refusing to order a sale where no real necessity is shown, and it is un-

certain that a sale would be beneficial to the person under disability.

H. E. ROSS for appellant.

GEORGE VAUGHN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

Joseph Piper is a lunatic confined in the Eastern Kentucky Lunatic Asylum. He is fifty years old. J. P. Shaw is his committee. Piper owns a farm in Fayette county of 174 acres worth $60 or $70 an acre. Shaw, as committee, brought this suit under section 489 of the Code to sell the farm and invest the proceeds in other property on the ground that the improvements were in bad condition, that the land could not be rented for a sum adequate to the amount of the investment, or for a net sum sufficient to support the lunatic and make the improvements, and the committee had not sufficient personal estate to make the improvements. The court appointed a guardian ad litem for the lunatic. Proof was taken and on final hearing the court refused to order a sale of the property for reinvestment. The committee appeals.

Whether the sale should have been ordered is a question purely of fact on which we are of opinion that we should not disturb the chancellor's finding. What weight should be given to the judgment of the different witnesses who testified on the subject can be better determined by one who knows the witnesses than by us. The chancellor has a discretion in matters such as this, and his discretion should not be disturbed on doubtful grounds. The farm is a valuable one. It only cost $150 a year to support the lunatic. The fences on the farm are in bad condition; the buildings need roofing; the ponds need cleaning out; but the land will rent for $3 or $4 an acre for grazing purposes and for $5 or $6 an acre for grazing and cultivating with the fences repaired. There seems to be no reason why this farm if handled as a farmer of good judgment would handle his own property, should not bring an income sufficient to make the repairs needed in a few years, and provide in the meantime for the lunatic. The committee has in his

hands $400 or $500 in money, and by using some of this and some of the rent, the necessary repairs can soon be made. If necessary the committee may be authorized to rent the property for a term, the tenant to make the repairs necessary. At any rate we see no necessity for a sale of the property.

Judgment affirmed.